IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

**AUDREY DIANNE KENNEY,**

    Plaintiff,

v.                                                Civil Action No. 3:12-CV-123
                                                        (JUDGE GROH)

**THE INDEPENDENT ORDER OF FORESTERS,**

    Defendant.

## ORDER DENYING PLAINTIFF'S MOTION TO REMAND

Currently pending before the Court is the Plaintiff's Motion to Remand [Doc. 4], filed on October 18, 2012. The Defendant responded on October 31, 2012 [Doc. 6], and the Plaintiff replied on November 6, 2012 [Doc. 9]. The Court, having reviewed the motion and the memoranda submitted with regard thereto, finds that the Plaintiff's motion must be **DENIED**.

## BACKGROUND

### I.    Factual Allegations

The Defendant, the Independent Order of Foresters ("IOF") is a Canadian Fraternal Benefit Society. On or about November 14, 1984, Defendant IOF issued a "Forester Flexible Premium Adjustable Life Certificate" (the "Policy") Certificate No. 3710133 to Ronald Lee Kenney. Plaintiff, Audrey Dianne Kenney ("Kenney"), is the wife of the decedent, and she is also the designated beneficiary of the Policy.

Plaintiff Kenney alleges that in 1994, Defendant IOF induced her husband,

1

Ronald Kenney, to increase the face value of the policy from $80,000 to $130,000. Defendant IOF argues that Ronald Kenney, the insured, failed to return the offer to increase the death benefits by the deadline; thus, the offer expired by its own terms. The Policy was in force on September 19, 2011, when Ronald Kenney passed away due to complications associated with lung cancer.  On September 21, 2011, Plaintiff Kenney, as the designated beneficiary, made a claim for $130,000, the alleged proceeds of the Policy.  Defendant IOF offered Plaintiff Kenney $80,000.

Because Defendant IOF refused to pay $130,000 pursuant to the Policy, Plaintiff Kenney retained counsel and filed an Administrative Complaint with the West Virginia Insurance Commissioners' Office.  Prior to the Administrative Hearing, Defendant IOF paid Plaintiff Kenney $130,000.

## II.  Procedural History

On September 27, 2012, Plaintiff Kenney filed this action in the Circuit Court of Berkeley County, West Virginia.   On September 21, 2012, the West Virginia Secretary of State received a copy of the Summons and Complaint.  Defendant IOF was served with the Summons and Complaint on September 27, 2012.

Defendant IOF filed its Notice of Removal [Doc. 1] in this Court on October 16, 2012.  Plaintiff Kenney filed her Motion to Remand [Doc. 4] on October 18, 2012. Defendant IOF filed its response [Doc. 6] on October 31, 2012.  Plaintiff Kenney filed her reply [Doc. 9] on November 6, 2012.

## DISCUSSION

**I.     Applicable Law**

The right to remove a case from state to federal court is provided by statute, 28 U.S.C. § 1441, which provides in pertinent part:

> (a) . . . any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

When an action is removed from state court, a federal district court must determine whether it has original jurisdiction over the plaintiff's claims. "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, . . . which is not to be expanded by judicial decree." ***Kokkonen v. Guardian Life Ins. Co. of Am.***, 511 U.S. 375, 77, 114 S. Ct. 1673 (1994) (internal citations omitted). Removal jurisdiction raises significant federalism concerns; thus, it is strictly construed. ***Shamrock Oil & Gas Corp. v. Sheets***, 313 U.S. 100, 61 S. Ct. 868 (1941).

The party seeking removal has "[t]he burden of establishing federal jurisdiction." ***Mulcahey v. Columbia Organic Chems. Co., Inc.***, 29 F.3d 148, 151 (4th Cir. 1994) (citing ***Wilson v. Republic Iron & Steel Co.***, 257 U.S. 92, 42 S. Ct. 35 (1921)). Federal courts have original jurisdiction over primarily two types of cases: (1) those involving federal questions under 28 U.S.C. § 1331, and (2) those involving diversity of citizenship under 28 U.S.C. § 1332. When a party seeks removal based upon diversity of citizenship under 28 U.S.C. § 1332, the party must establish that "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states." 28 U.S.C. § 1332.

## II.     Analysis

The parties in this action do not dispute diversity of citizenship.  The only matter in dispute is whether the jurisdictional minimum amount in controversy is met.

In Plaintiff Kenney's Motion to Remand, she argues that "the removing party makes no effort to prove the value of [her] claim."  Thus, the Plaintiff argues that Defendant IOF has failed to meet its burden of proving that the claim meets the requisite jurisdictional amount.  For the reasons that follow, this Court disagrees.

In a removal action that premises federal jurisdiction upon 28 U.S.C. § 1332, the defendant "bears the burden of demonstrating that removal jurisdiction is proper." **Ellenburg v. Spartan Motors Chassis, Inc.**, 519 F.3d 192, 200 (4th Cir. 2008).  When the amount of damages a Plaintiff seeks is unclear, for example, by failing to plead a specific dollar amount in the Complaint, then the Defendant must establish the jurisdictional amount by a preponderance of the evidence. See **Marshall v. Kimble**, No. 5:10-CV-127, 2011 WL 43034, at *2 (N.D.W. Va. Jan. 6, 2011); **Allman v. Chancellor Health Partners, Inc.**, No. 5:08-CV-155, 2009 WL 514086 (N.D.W. Va. Mar. 2, 2009).   In order to meet the preponderance of the evidence standard and establish that removal is proper, "a defendant must show that it is more likely than not that the amount in controversy exceeds the jurisdictional amount." **Heller v. TriEnergy, Inc.**, No. 5:12-CV-45, 2012 WL 2740870 (N.D.W. Va. July 9, 2012).  A court may engage in an independent evaluation to determine whether the amount in controversy has been met, and the court may look to the entire record before it, including the Plaintiff's Complaint and the Defendant's Notice of Removal. **Mullins v. Harry's Mobile Homes, Inc.**, 861 F. Supp. 22, 23 (S.D.W. Va. 1994) (finding

jurisdictional amount met through a common sense evaluation of the record, even though Plaintiff did not state a specific dollar amount of damages in the Complaint).  In evaluating whether the amount in controversy has been satisfied, the court may consider:

> the type and extent of the plaintiff's injuries and the possible damages recoverable therefore, including punitive damages if appropriate.  The possible damages recoverable may be shown by the amounts awarded in other similar cases.  Another factor for the court to consider would be the expenses or losses incurred by the plaintiff up to the date the notice of removal was filed.  The defendant may also present evidence of any settlement demands made by the plaintiff prior to removal although the weight to be given such demands is a matter of dispute among courts.

***Watterson v. GMRI, Inc.***, 14 F. Supp. 2d 844, 850 (S.D.W. Va. 1997) (internal citations omitted).

### i. Complaint

Here, Plaintiff Kenney's Complaint alleges violations of the West Virginia Unfair Trade Practices Act and the Insurance Commissioners regulations promulgated pursuant to that act, as well as common law bad faith claims.  The Plaintiff is seeking damages for the following: (1) compensation for damages as a result of Defendant IOF's alleged refusal to honor her insurance claim; (2) compensation for damages as a result of Defendant IOF's alleged breach of the implied covenant of good faith and fair dealing; (3) compensation for Defendant IOF's alleged violations of the West Virginia Unfair Trade Practices Act and the Insurance Commissioners regulations promulgated pursuant to the act; (4) punitive damages; (5) reimbursement for any and all attorneys' fees, costs, and expenses she incurs or has incurred in pursuit of the relief requested in her Complaint; (6) any specific or general relief that may become apparent as the case progresses; and (7) any such other relief as the Court deems proper.  Plaintiff Kenney

does not plead a specific dollar amount for her damages.

First, Plaintiff Kenney asserts that she had to obtain a loan in order to pay for the costs of her husband's funeral. Compl. ¶ 32. Plaintiff does not state the amount of the loan. However, the Federal Trade Commission contends that a traditional funeral costs about $6,000, with many funerals running well over $10,000. Federal Trade Comm'n, "Facts for Consumers," http://www.ftc.gov/bcp/edu/pubs/consumer/products/pro19.shtm (Nov. 24, 2009). Thus, the Court can make a common sense evaluation that Plaintiff Kenney's loan was more likely than not at least about $6,000 for purposes of determining the amount in controversy. Plaintiff also seeks to recover interest on the loan.

Second, Plaintiff Kenney's Complaint contains a claim for reasonable attorneys fees and expenses in bringing this action. Under West Virginia law, an insured who substantially prevails in a suit against the insurer is entitled to attorney fees and consequential damages. *See* **Hayseeds, Inc. v. State Farm Fire & Cas.**, 352 S.E.2d 73, 80 (W. Va. 1986). Additionally, there is a presumption that:

> reasonable attorneys' fees . . . are one-third of the face amount of the policy, unless the policy is either extremely small or enormously large. This follows from the contingent nature of most representation of this sort and the fact that the standard contingent fee is 33 percent. But when a claim is for under $20,000 or for over $1,000,000 (to take numbers that are applicable in 1986) the court should then inquire concerning what "reasonable attorneys' fees" are.

*Id.* Here, the policy is $130,000. Therefore, reasonable attorneys' fees are presumed to be 33 percent, or around $43,333.

Third, Plaintiff Kenney's Complaint contains a seemingly good faith claim for punitive

6

damages. Multiple courts have considered a plaintiff's good faith claim for punitive damages in its calculation of the amount in controversy. *See* **Heller**, 2012 WL 2740870, at *10 (noting that the punitive damages played a role in determining that the action more likely than not involved more than $75,000); **Bryant v. Wal-Mart**, 117 F. Supp. 2d 555, 556-557 (S.D.W. Va. Oct. 20, 2000) ("A good faith claim for punitive damages may augment compensatory damages in determining the amount in controversy unless it can be said to a legal certainty that plaintiff cannot recover punitive damages in the action.").

Under West Virginia law, punitive damages are recoverable in actions for statutory bad faith claims against the insurer pursuant to West Virginia Code § 33-11-4(9). *See* **Goff v. Penn Mut. Life Ins. Co.**, 729 S.E.2d 890, 896 (W. Va. 2012) (holding that "upon the death of the insured, a primary beneficiary of a life insurance policy has standing to bring a statutory bad faith claim against the insurer pursuant to West Virginia Code § 33-11-4(9)"); **Hayseeds, Inc.**, 352 S.E.2d at 80-81 (stating punitive damages are proper in first-party insurance suits if the insured can prove the insurer acted with actual malice, meaning "the company actually knew that the policyholder's claim was proper, but willfully, maliciously and intentionally denied the claim"); **D'Annunzio v. Sec.-Conn. Life Ins. Co.**, 410 S.E.2d 275, 270 (W. Va. 1991) (holding that *Hayseeds* applies to life insurance policies as well because it is first-party insurance). In awarding punitive damages, the ratio of punitive damages to compensatory damages can be as much as a single digit. **State Farm Mut. Auto. Ins. Co. v. Campbell**, 538 U.S. 408, 425 (2003) (United States Supreme Court suggesting in dicta that single digit ratios are presumptively valid). Indeed, a single digit multiplier has been applied to estimate punitive damages in light of compensatory

damages for purposes of determining the amount in controversy. **Coleman v. Wicker**, No. 2:11-00558, 2012 WL 1111465, *3 (S.D.W. Va. Mar. 30, 2012) (applying a one-half multiplier for punitive damages to an estimated $63,000 in damages to meet the jurisdictional minimum for diversity).  Plaintiff Kenney's Complaint makes a good faith allegation that Defendant IOF willfully, maliciously and intentionally denied her claim; therefore, Plaintiff Kenney's claim for punitive damages augments the amount in controversy.

Plaintiff Kenney heavily relies on the holding in *Fahnestock*, which stated that "the mere likelihood of punitive damages *without more,* does not give rise to federal jurisdiction." **Fahnestock v. Cunningham**, No. 5:10-CV-89, 2011 WL 1831596, at *2 (N.D.W. Va. May 12, 2011) (internal citations omitted) (emphasis added).  The Plaintiff's reliance on this case is misplaced as Defendant IOF relies on the multiple claims raised in the Complaint and other evidence to show that it is more likely than not that the requisite jurisdictional amount is met.

### ii. Settlement Demand

As part of a court's common sense evaluation of the amount in controversy, a court may look to settlement demands made by the plaintiff.  **Scaralto v. Ferrell**, 826 F. Supp. 2d 960, 963 (S.D.W. Va. 2011) (holding that "a settlement demand should have the same legal status as an *ad damnum* clause over the jurisdictional minimum, *i.e.*, it should be conclusive of the amount in controversy unless it is a legal certainty that the plaintiff cannot recover over $75,000"); **Williams v. Hodgson**, No. 5:11-CV-80, 2011 WL 3793328, at *2 (N.D.W. Va. Aug. 24, 2011) (taking settlement demand into consideration, but ultimately

concluding that the evidence, by itself, did not constitute competent proof of the amount in controversy); **Soos v. Kmart Corp.**, No. 5:08-CV-163, 2009 WL 192447, *2-3 (N.D.W. Va. Jan. 26, 2009) (finding the amount in controversy requirement was not met when the plaintiffs' settlement demand was $250,000, but later the medical bills only amounted to $30,000 and the plaintiffs filed an affidavit stating they were willing to accept $75,000 to settle their claims).

The Plaintiff made a pre-suit settlement demand of $100,000. This appears to be the Plaintiff's own reasonable assessment of the value of her claims. If the settlement demand was the only evidence the Defendant relied on in asserting the amount in controversy requirement had been met, this Court may have been inclined to reach a different conclusion. However, the Court **FINDS** that the settlement demand combined with the Court's common sense evaluation of the Plaintiff's Complaint and the claims therein prove by a preponderance of the evidence that the amount in controversy requirement has been met.

Accordingly, the Plaintiff's Motion to Remand is **DENIED.**

## CONCLUSION

For the reasons stated above, the Court finds that the Plaintiff's Motion to Remand should be, and hereby is, **DENIED**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED**: December 11, 2012.

_____
GINA M. GROH
UNITED STATES DISTRICT JUDGE