**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**AUDREY DIANNE KENNEY,**

    Plaintiff,

v.                                          **CIVIL ACTION NO. 3:12-CV-123
(JUDGE GROH)**

**THE INDEPENDENT ORDER OF FORESTERS,**

    Defendant.

<u>**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR RECONSIDERATION**</u>

**I. Introduction**

On April 10, 2013, Plaintiff filed her "Motion to Reconsider (or Otherwise Alter or Amend) Memorandum Opinion and Order of March 27, 2013." On April 22, 2013, Defendant filed its response. On April 29, 2013, Plaintiff filed her reply. Upon careful consideration and for the following reasons, the Court **GRANTS** Plaintiff's Motion for Reconsideration. Accordingly, the Court will enter an amended memorandum opinion and order regarding Defendant's Motion to Dismiss Based on Virginia law.

**II. Facts and Procedural History**

Plaintiff Audrey Dianne Kenney ("Plaintiff") is a resident of Martinsburg, Berkeley County, West Virginia. Plaintiff is the widow of Ronald Lee Kenney ("Insured"). Defendant The Independent Order of Foresters ("Defendant") is a fraternal insurance company with its principle place of business at 789 Don Mills Road, Toronto, Canada

1

M3C 1T9.  Defendant has a United States mailing address of P.O. Box 179, Buffalo, New York 14201-0179.  Plaintiff alleges that Defendant was authorized to transact business in the State of West Virginia, and Plaintiff sold life insurance policies and collected premiums from the citizens of the State of West Virginia.  Plaintiff contends that Defendant and its employees are responsible for the handling, adjustment, and settlement of claims presented under insurance policies issued by Defendant and its affiliated companies to West Virginia residents.  Defendant's employees include sales agents, which are sometimes referred to as Deputies.

On November 14, 1984, Defendant issued Plaintiff's late husband, Insured, a "Forester Flexible Premium Adjustable Life Certificate," Certificate No. 371033, with a face amount of $80,000.  Plaintiff was the designated beneficiary of the policy.  During 1994, Plaintiff alleges that she and her husband were induced by Defendant and its Deputies to increase the policy's face value from $80,000 to $130,000.  Plaintiff contends that Defendant and its Deputies represented to Plaintiff and her husband that an increase in the policy's face value would be beneficial for tax purposes.

On or about May 25, 1994, Plaintiff's husband completed an "Application For: Change" form, which was one of Defendant's documents.  A Defendant's Deputy filled out the form, and Plaintiff's husband signed it.  Section II of the form states a "FULI" request to increase the Policy's face amount to $130,000.  On or about May 25, 1994, the form was signed by Defendant's Deputy Mark Ruth.  On May 31, 1994, Defendant marked the submitted form as received by its underwriting department.

On or about January 3, 1995, Richard J. Lyles, Defendant's Deputy, presented Ronald Kenney with a document entitled "Acceptance of Change in Application (Change

#4529)," and Richard Lyles counter-signed the document as a "witness." The "Acceptance of Change in Application" indicated that "an additional $50,000.00 (Fifty Thousand Dollars) is issued on the member [Kenney, Ronald L.] with an extra rate." Richard Lyles solicited Plaintiff's husband's signature on the "Acceptance of Change in Application," and he represented that the document needed to be signed for the additional $50,000 coverage to go into effect. Richard Lyles did not advise Plaintiff's husband or Plaintiff that the "Acceptance of Change in Application" may be ineffective because it had not been timely received at Defendant's headquarters before the October 18, 1994 expiration date, printed in the lower right corner of the application. Defendant received the submitted "Acceptance of Change in Application" on January 5, 1995.

In 2003, Plaintiff and her husband moved to West Virginia. Plaintiff's husband passed away on September 19, 2011. Therefore, Plaintiff and her husband resided in West Virginia for approximately eight years prior to his death.

Plaintiff contends that in reliance upon Defendant's Deputies' superior knowledge of the insurance products and the representations made by the Deputies, she and her husband had a reasonable expectation that the face amount of his life insurance policy had in fact been increased from $80,000 to $130,000. Plaintiff also argues that her reasonable expectation was confirmed by an increase in the Policy premium that was being directly deducted from the Kenney's joint checking account in an amount previously indicated by Deputy Richard J. Lyles as the new premium and the Defendant's Annual Statements reflected that premiums which were being directly deducted from the Kenneys' joint checking account were being applied to "Premiums

3

Paid." Also, Defendant issued a Specification of Certificate Changes to Insured indicating a Schedule of Benefits of $130,000 Flexible Premium Adjustable Life, with an August 14, 1994 effective date.

On September 19, 2011, Plaintiff's husband passed away due to complications associated with lung cancer. Plaintiff alleges that the policy was in force on September 19, 2011. On September 21, 2011, Plaintiff, as the listed beneficiary, made her claim under her late husband's life insurance policy for the $130,000 policy proceeds. Defendant denied Plaintiff the policy's full benefits, and Defendant offered her $80,000 of the $130,000 policy in settlement of her claim.

As a result of Defendant's denial of the $130,000, Plaintiff alleges she had to obtain a loan to pay for the costs of her husband's funeral. Also, Plaintiff stated she filed a complaint with the West Virginia Insurance Commissioners' Office on November 1, 2011, and she consulted and retained an attorney. Defendant never informed Plaintiff in any written document of her option to contact the West Virginia Insurance Commissioners' Office if she did not agree with Defendant's coverage decision. On July 20, 2012, Defendant stated in a letter to Plaintiff that there were some inconsistencies within the file that led them to the conclusion that Mr. Kenney would have assumed the face amount of the insurance certificate remained at the increased coverage amount of $130,000. Thereafter, Defendant paid Plaintiff $130,000. As a result, Plaintiff argues she substantially prevailed in obtaining all of the coverage to which she was lawfully entitled to as a beneficiary under the Policy. Plaintiff seeks compensatory damages for Defendant's bad faith conduct, improper denial of Plaintiff's claim under the Policy, violations of the West Virginia Unfair Trade Practices Act and

the regulations promulgated by the West Virginia Insurance Commissioner pursuant to the WVUTPA, and breach of the implied covenant of good faith and fair dealing, as well as punitive damages and attorney's fees and costs.

Plaintiff filed this action in the Circuit Court of Berkeley County, West Virginia on September 27, 2012.  The West Virginia Secretary of State received a copy of the Summons and Complaint on September 21, 2012, and Defendant was served on September 27, 2012.  Defendant filed its Notice of Removal on October 16, 2012, within thirty days of service, pursuant to this Court's diversity jurisdiction.  On October 18, 2012, Plaintiff filed a Motion to Remand to State Court.  On December 11, 2012, this Court denied Plaintiff's Motion to Remand after determining that it had jurisdiction over the case.

On December 11, 2012, Defendant filed its Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff filed her Response on December 20, 2012.  Defendant filed its Reply on December 27, 2012.  On December 20, 2012, Defendant filed a second Motion to Dismiss Based on Virginia Law.  Plaintiff filed her Response on December 27, 2012.  Defendant filed its Reply on January 3, 2013.  On March 27, 2013, the Court found that the second motion to dismiss was dispositive of all the issues, and the Court granted Defendant's Motion to Dismiss Based on Virginia law.

On April 10, 2013, Plaintiff filed a Motion for Reconsideration requesting the Court to reconsider or otherwise alter or amend its March 27, 2013 judgment.

### III. Discussion

Plaintiff moves the Court to alter or amend its Memorandum Opinion and Order of March 27, 2013 pursuant to Rules 59 and 60 of the Federal Rules of Civil Procedure. [Doc. 34].  Rule 59(e) authorizes a district court to alter, amend, or vacate a prior

judgment, and Rule 60 provides for relief from judgment. Generally, if a motion is "served not later than 28 days after entry of the judgment," it will be treated as a motion under Rule 59(e). See **FED. R. CIV. P. 59(e);** see **Small v. Hunt**, 98 F.3d 789 (4th Cir. 1996) (citing **Campbell v. Bartlett**, 975 F.2d 1569, 1580 n.15 (10th Cir. 1992) ("Motions served within [28] days of judgment ordinarily will fall under Rule 59(e), while motions served later fall under Rule 60(b)) (internal quotations omitted)).[1] In this case, Plaintiff filed a "motion to reconsider," pursuant to Rules 59 and 60. Therefore, the Court will consider Plaintiff's arguments under both Rule 59(e) and Rule 60(b).

### A. Rule 59(e)

#### 1. Legal Standard

The United States Court of Appeals for the Fourth Circuit has repeatedly recognized that a judgment may be amended under Rule 59(e) in only three circumstances: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of the law or prevent manifest injustice. See **Gagliano v. Reliance Standard Life Ins. Co.**, 547 F. 3d 230, 241 n. 8 (4th Cir. 2008). A Rule 59(e) motion "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to entry of judgment." **Pac Ins. Co. v. Am. Nat'l Fire Ins. Co.**, 148 F.3d 396, 403 (4th Cir. 1998) (quoting 11 Wright, Miller & Kane, *Federal Practice and Procedure* § 2810.1, at 127-28 (2d ed. 1995)). If a party attempts to present newly discovered evidence in

---

[1] The cited case law provided that motions served with 10 days of judgment ordinarily will fall under Rule 59(e); however, Rule 59(e) has since been amended to provide 28 days, rather than 10 days.

support of its Rule 59(e) motion, it "must produce a legitimate justification for not presenting the evidence during the earlier proceeding." *Id.* (internal citations and quotation marks omitted). "In general, reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." *Id.* (internal citations and quotation marks omitted).

A Rule 59(e) motion "is not intended to allow for reargument of the very issues that the court has previously decided." **DeLong v. Thompson**, 790 F. Supp. 594, 618 (E.D. Va. 1991), *aff'd*, 985 F.2d 553 (4th Cir. 1993) (unpublished). A party may not "raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance." **Pac. Ins. Co.**, 148 F.3d at 403.

### 2. Analysis

In this case, Plaintiff filed her motion to reconsider within twenty-eight days of the entry of judgment as the judgment was entered on March 27, 2013 and the motion was filed on April 10, 2013. Therefore, Plaintiff's motion is timely under Rule 59(e).

Although a motion for reconsideration under Federal Rule of Civil Procedure 59(e) is committed to the discretion of the Court, as outlined earlier, the Fourth Circuit has recognized only three grounds for amending an earlier judgment: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." **Pac. Ins. Co.**, 148 F.3d at 402-03. Plaintiff argues that the Court should amend its earlier judgment to prevent a manifest injustice.

Plaintiff does not challenge the Court's contract choice of law analysis which characterized the Unfair Trade Practices claims as contract, rather than tort, claims. See **In re Digitek Prods. Liability Litig.**, MDL No. 2:08-md-01968, 2010 WL 2102330, *9-12 (May 25, 2010); **Pen Coal Corp. v. William H. McGee and Co., Inc.**, 903 F. Supp. 980, 983 (S.D.W. Va. 1995) (noting the hybrid nature of Unfair Trade Practices Acts claims but observing that "for the purpose of choice-of-law analysis . . . bad faith and unfair trade practices claims properly should be characterized as contract, not tort, claims.").

Instead, Plaintiff challenges the Court's tort choice of law analysis. Plaintiff argues that the Court erroneously stated that Plaintiff and her husband resided in West Virginia only one year prior to her husband's death. In fact, Plaintiff and her husband resided in West Virginia since 2003–eight years prior to her husband's death. Neither Plaintiff's Complaint nor Plaintiff's Response addressed how long Plaintiff had resided in West Virginia. Additionally, Defendant's memoranda contained conflicting dates. In Defendant's Motion and Supporting Memoranda, Defendant stated that Plaintiff and her husband moved to West Virginia in 2001. In Defendant's Reply, Defendant stated that Plaintiff and her husband moved to West Virginia in 2011. The Court, assuming 2001 was a typographical error, relied on 2011 as the date Plaintiff and her husband moved to West Virginia. The parties do not dispute that Plaintiff and her husband resided in West Virginia since 2003.

The Court, in conducting its torts choice of law analysis, specifically relied on the mistaken fact that Plaintiff resided in West Virginia for one year, rather than eight years.

8

In conducting its analysis of the various contacts under Section 145 of the Restatement (Second) of Conflicts of Laws, the Court partially relied on Plaintiff's one year residency to examine the third and the fourth contact. Also, in examining the Restatement's Section 6 factors, the Court mentioned Plaintiff's one year residency in examining factor (d). Therefore, the Court finds that Defendant's Motion for Reconsideration pursuant to Federal Rule of Civil Procedure 59(e) should be granted.

### B. Rule 60(b)

#### 1. Legal Standard

Before a party may seek relief under Rule 60(b), a party must first show "timeliness, a meritorious defense, a lack of unfair prejudice to the opposing party, and exceptional circumstances." **Dowell v. State Farm Fire & Cas. Auto. Ins. Co.**, 993 F.2d 46, 48 (4th Cir. 1993) (quoting **Werner v. Carbo**, 731 F.2d 204, 207 (4th Cir. 1984)). After a party has satisfied the initial inquiry, the moving party must demonstrate at least one of the six listed grounds in Rule 60(b). **Werner**, 731 F.2d at 207. Rule 60(b) provides:

> **Grounds for Relief from a Final Judgment, Order, or Proceeding**. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

>    (6) any other reason that justifies relief.

**FED. R. CIV. P. 60(b)**. The moving party "must clearly establish the grounds therefor to the satisfaction of the district court," and those grounds "must be clearly substantiated by adequate proof." *In re Burnley*, 988 F.2d 1, 3 (4th Cir. 1992) (citations omitted).

### 2. Analysis

Plaintiff must first demonstrate the four threshold requirements of "timeliness, a meritorious defense, a lack of unfair prejudice to the opposing party, and exceptional circumstances." *Dowell*, 993 F.2d at 48 (citation omitted). First, the motion was timely because it was filed within one year of the judgment. Second, Plaintiff has presented a possible meritorious defense as the Court should conduct the tort choice of law analysis with the correct facts, specifically the length of time Plaintiff and Insured resided in West Virginia. *See Bonney v. Roelle*, 117 F.3d 1413, *9 (4th Cir. 1997) (finding movants presented a meritorious defense because there was a possibility that the outcome may be contrary to the result achieved). Third, there is a lack of unfair prejudice to the opposing party as Plaintiff's Motion for Reconsideration was filed within two weeks from the date of this Court's judgment. Last, exceptional circumstances exist because the Court conducted its analysis under a mistaken belief that Plaintiff and her husband resided in West Virginia for only one year rather than eight years prior to her husband's death. Additionally, the accuracy of such a fact is important as a tort choice of law analysis is primarily fact-driven.

Plaintiff argues that the Court erroneously stated that Plaintiff and her husband had resided in West Virginia since 2011, only one year prior to her husband's death. In

fact, Plaintiff and her husband resided in West Virginia since 2003–eight years prior to her husband's death. The Court, as stated above, specifically relied on the erroneous fact that Plaintiff resided in West Virginia for one year rather than eight years. The Court relied on this numerous times in conducting its tort choice of law analysis. Therefore, the Court finds that Plaintiff's Motion for Reconsideration should also be granted pursuant to Rule 60(b).

### IV. Conclusion

For the foregoing reasons, this Court hereby **GRANTS** Plaintiff's Motion for Reconsideration [Doc. 34]. The Court will enter an amended memorandum opinion and order regarding Defendant's Motion to Dismiss Based on Virginia Law.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record.

**DATED:** June 18, 2013

_____
GINA M. GROH
UNITED STATES DISTRICT JUDGE