IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

**AUDREY DIANNE KENNEY,**

    Plaintiff,

**v.**                                          **CIVIL ACTION NO. 3:12-CV-123**
                                                               **(JUDGE GROH)**

**THE INDEPENDENT ORDER OF FORESTERS,**

    Defendant.

**AMENDED MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS BASED ON VIRGINIA LAW**

Plaintiff Audrey Dianne Kenney brings a claim under the West Virginia Unfair Trade Practices Act. This matter is currently before the Court on Plaintiff's Motion to Reconsider (or otherwise alter or amend) Memorandum Opinion and Order of March 27, 2013.

On March 27, 2013, this Court granted Defendant The Independent Order of Foresters' Motion to Dismiss Based on Virginia Law [Doc. 16] after determining that Virginia law applied pursuant to a contract and a tort choice of law analysis. On April 10, 2013, Plaintiff filed her motion to reconsider. On April 22, 2013, Defendant filed its response. On April 29, 2013, Plaintiff filed her reply. By previous Order, this Court granted Plaintiff's Motion to Reconsider and stated an amended Memorandum Opinion and Order regarding Defendant's Motion to Dismiss Based on Virginia Law would be entered. After reviewing the parties' memoranda for Defendant's Motion to Dismiss Based on Virginia Law and Plaintiff's Motion to Reconsider, the Court finds that Defendant's Motion to Dismiss Based

1

on Virginia Law should be granted.

## I.  Factual Background

Plaintiff Audrey Dianne Kenney ("Plaintiff") is a resident of Martinsburg, Berkeley County, West Virginia.  Plaintiff is the widow of Ronald Lee Kenney ("Insured").  Defendant The Independent Order of Foresters ("Defendant") is a fraternal insurance company with its principle place of business at 789 Don Mills Road, Toronto, Canada M3C 1T9.  Defendant has a United States mailing address of P.O. Box 179, Buffalo, New York 14201-0179.  Plaintiff alleges that Defendant was authorized to transact business in the State of West Virginia, and Plaintiff sold life insurance policies and collected premiums from the citizens of the State of West Virginia.  Plaintiff contends that Defendant and its employees are responsible for the handling, adjustment, and settlement of claims presented under insurance policies issued by Defendant and its affiliated companies to West Virginia residents.  Defendant's employees include sales agents, which are sometimes referred to as Deputies.

On November 14, 1984, Defendant issued Plaintiff's late husband, Insured, a "Forester Flexible Premium Adjustable Life Certificate," Certificate No. 371033, with a face amount of $80,000.  Plaintiff was the designated beneficiary of the policy.  During 1994, Plaintiff alleges that she and her husband were induced by Defendant and its Deputies to increase the policy's face value from $80,000 to $130,000.  Plaintiff contends that Defendant and its Deputies represented to Plaintiff and her husband that an increase in the policy's face value would be beneficial for tax purposes.

On or about May 25, 1994, Plaintiff's husband completed an "Application For: Change" form, which was one of Defendant's documents.  A Defendant's Deputy filled

out the form, and Plaintiff's husband signed it.  Section II of the form states a "FULI" request to increase the Policy's face amount to $130,000.  On or about May 25, 1994, the form was signed by Defendant's Deputy Mark Ruth.  On May 31, 1994, Defendant marked the submitted form as received by its underwriting department.

On or about January 3, 1995, Richard J. Lyles, Defendant's Deputy, presented Ronald Kenney with a document entitled "Acceptance of Change in Application (Change #4529)," and Richard Lyles counter-signed the document as a "witness."  The "Acceptance of Change in Application" indicated that "an additional $50,000.00 (Fifty Thousand Dollars) is issued on the member [Kenney, Ronald L.] with an extra rate."  Richard Lyles solicited Plaintiff's husband's signature on the "Acceptance of Change in Application," and he represented that the document needed to be signed for the additional $50,000 coverage to go into effect.  Richard Lyles did not advise Plaintiff's husband or Plaintiff that the "Acceptance of Change in Application" may be ineffective because it had not been timely received at Defendant's headquarters before the October 18, 1994 expiration date, printed in the lower right corner of the application.  Defendant received the submitted "Acceptance of Change in Application" on January 5, 1995.

In 2003, Plaintiff and her husband moved to West Virginia.  Plaintiff's husband passed away on September 19, 2011.  Therefore, Plaintiff and her husband resided in West Virginia for approximately eight years prior to his death.  After her husband's death, Plaintiff filed a claim to receive the policy's proceeds.

Plaintiff contends that in reliance upon Defendant's Deputies' superior knowledge of the insurance products and the representations made by the Deputies, she and her

husband had a reasonable expectation that the face amount of his life insurance policy had in fact been increased from $80,000 to $130,000.  Plaintiff also argues that her reasonable expectation was confirmed by an increase in the Policy premium that was being directly deducted from the Kenney's joint checking account in an amount previously indicated by Deputy Richard J. Lyles as the new premium and the Defendant's Annual Statements reflected that premiums, which were being directly deducted from the Kenneys' joint checking account, were being applied to "Premiums Paid."  Also, Defendant issued a "Specification of Certificate Changes" to Insured indicating a Schedule of Benefits of $130,000 Flexible Premium Adjustable Life with an effective date of August 14, 1994.

On September 19, 2011, Plaintiff's husband passed away due to complications associated with lung cancer.  Plaintiff alleges that the policy was in force on September 19, 2011.  On September 21, 2011, Plaintiff, as the listed beneficiary, made her claim under her late husband's life insurance policy for the $130,000 policy proceeds.  Defendant denied Plaintiff the policy's full benefits, and Defendant offered her $80,000 of the $130,000 policy in settlement of her claim.

As a result of Defendant's denial of the $130,000, Plaintiff alleges she had to obtain a loan to pay for the costs of her husband's funeral.  Also, Plaintiff stated she filed a complaint with the West Virginia Insurance Commissioners' Office on November 1, 2011, and she consulted and retained an attorney. Plaintiff alleges that Defendant never informed Plaintiff in any written document of her option to contact the West Virginia Insurance Commissioners' Office if she did not agree with Defendant's coverage decision.  On July 20, 2012, Defendant stated in a letter to Plaintiff that there

were some inconsistencies within the file that led them to the conclusion that Mr. Kenney would have assumed the face amount of the insurance certificate remained at the increased coverage amount of $130,000. Thereafter, Defendant paid Plaintiff $130,000. As a result, Plaintiff argues she substantially prevailed in obtaining all of the coverage to which she was lawfully entitled to as a beneficiary under the Policy. Plaintiff seeks compensatory damages for Defendant's bad faith conduct, improper denial of Plaintiff's claim under the Policy, violations of the West Virginia Unfair Trade Practices Act and the regulations promulgated by the West Virginia Insurance Commissioner pursuant to that Act, and breach of the implied covenant of good faith and fair dealing, as well as punitive damages and attorney's fees and costs.

## II.  Procedural Background

Plaintiff filed this action in the Circuit Court of Berkeley County, West Virginia on September 27, 2012. The West Virginia Secretary of State received a copy of the Summons and Complaint on September 21, 2012, and Defendant was served on September 27, 2012. Defendant filed its Notice of Removal on October 16, 2012, within thirty days of service, pursuant to this Court's diversity jurisdiction. On October 18, 2012, Plaintiff filed a Motion to Remand to State Court. On December 11, 2012, this Court denied Plaintiff's Motion to Remand after determining that it had jurisdiction over the case.

On December 11, 2012, Defendant filed its Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff filed her Response on December 20, 2012. Defendant filed its Reply on December 27, 2012. On December 20, 2012, Defendant filed a second Motion to Dismiss Based on Virginia Law. Plaintiff filed her Response on December 27, 2012. Defendant filed its Reply on January 3, 2013. On

March 27, 2013, the Court found that the second motion to dismiss was dispositive of all the issues, and the Court granted Defendant's Motion to Dismiss Based on Virginia law after determining that Virginia law applied pursuant to a contract and a tort choice of law analysis.

On April 10, 2013, Plaintiff filed her motion to reconsider. On April 22, 2013, Defendant filed its response. On April 29, 2013, Plaintiff filed her reply. By previous Order, this Court granted Plaintiff's Motion to Reconsider and stated an amended Memorandum Opinion and Order regarding Defendant's Motion to Dismiss Based on Virginia Law would be entered. After reviewing the parties' memoranda for Defendant's Motion to Dismiss Based on Virginia Law and Plaintiff's Motion to Reconsider, the Court finds that Defendant's Motion to Dismiss Based on Virginia Law should be granted.

### III.  Legal Standard

When reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must assume all of the allegations to be true, must resolve all doubts and inferences in favor of the plaintiff, and must view the allegations in a light most favorable to the plaintiff. **Edwards v. City of Goldsboro,** 178 F.3d 231, 243-44 (4th Cir. 1999). But, a complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is *plausible* on its face." **Bell Atl. Corp. v. Twombly**, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007) (emphasis added). "A complaint need only give 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" **In re Mills**, 287 Fed. Appx. 273, 280 (4th Cir. 2008) (quoting **Fed. R. Civ. P. 8(a)(2)**). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is

and the grounds upon which it rests." *Id.* (internal quotations and citations omitted). However, "[t]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancements." ***Ashcroft v. Iqbal***, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).

When rendering its decision, the Court may also consider facts derived from sources beyond the four corners of the complaint, including documents attached to the complaint, documents attached to the motion to dismiss "so long as they are integral to the complaint and authentic," and facts subject to judicial notice under Federal Rule of Evidence 201. ***Philips v. Pitt Cnty. Mem'l Hosp.***, 572 F.3d 176, 180 (4th Cir. 2009) (citing ***Blankenship v. Manchin***, 471 F.3d 523, 526 n. 1 (4th Cir. 2006)); *see also* ***Katyle v. Penn Nat'l Gaming, Inc.***, 637 F.3d 462, 466 (4th Cir. 2011).

### IV. Discussion

**A. Choice of Law Analysis**

Defendant's second Motion to Dismiss is based on Virginia law. Defendant argues that West Virginia law does not apply, rather, Virginia law applies to Plaintiff's claim under the life insurance contract's choice of law provision or, alternatively, under a contract choice of law analysis. Defendant contends that Plaintiff's Complaint must be dismissed for failure to state a claim upon which relief can be granted because Virginia law does not recognize Plaintiff's claim.

Plaintiff argues that her injuries do not sound in contract, but in tort because she is claiming Defendant engaged in unfair settlement practices. Therefore, Plaintiff contends that a tort choice of law analysis should apply, which would result in West Virginia's law applying to Plaintiff's claim. Defendant, in its reply, argued that even if the Court applied a tort choice of law analysis, Virginia's law would still be the applicable law.

A federal court sitting in diversity must apply the choice of laws analysis of the forum state. **Sokolowski v. Flanzer**, 769 F.2d 975, 977 (4th Cir. 1985) (citing **Klaxon v. Stentor Elec. Manuf. Co.**, 313 U.S. 487, 494, 496, 61 S. Ct. 1020, 1020-21 (1941)). This Court is located in West Virginia and is sitting in diversity; thus, West Virginia's choice of law analysis applies.

*1. Contracts Choice of Law Analysis*

With respect to contract cases, the Supreme Court of Appeals of West Virginia "has repeatedly recognized that questions of policy *coverage* as opposed to *liability* are governed by conflicts of law principles applicable to contracts." **Howe v. Howe**, 625 S.E.2d 716, 721 (W. Va. 2005) (citations omitted). The general rule is insurance contractual relationships are controlled by the law of the state in which the policy was issued. **Lee v. Saliga**, 373 S.E.2d 345, 348 (W. Va. 1988). However, the general rule does not apply if (1) the parties have made a choice of applicable law in the contract itself and (2) the law of the other states offends West Virginia's public policy. *Id.* at 351.

In this case, the life insurance contract contains a choice of law provision. West Virginia law generally will enforce the provision "unless the chosen state has no

8

substantial relationship to the parties to the transaction or unless the application of the law of the chosen state would be contrary to the fundamental public policy of the state whose law would apply in the absence of a choice of law provision." **Bryan v. Mass. Mut. Life. Ins. Co.**, 364 S.E.2d 786, 790 (W. Va. 1987) (citing **Gen. Elec. Co. v. Keyser**, 275 S.E.2d 289, 293 (W. Va. 1981)).

The choice of law provision in the Policy provides:

LAW APPLICABLE– The rights or obligations of the member or anyone rightfully claiming under this certificate will be governed by the laws of the State in which this certificate is delivered.

([Doc. 16], p. 1).  The certificate of insurance was delivered in the State of Virginia; therefore, the contract provides that Virginia law governs "[t]he rights or obligations" of the beneficiary claiming under the policy.  ([Doc. 16], Ex. A).  Upon review, the Court finds that the State of Virginia has a substantial relationship to this case.  The insured and the named beneficiary, Plaintiff, were residents of the State of Virginia at the time the insured applied for the insurance coverage in 1984. ([Doc. 16], Ex. B).  Also, the certificate of insurance was issued to the insured in the State of Virginia.  *Id.*  The insured lived in Virginia for seventeen years.  ([Doc. 16], Ex. E.).  Additionally, the primary issue of the lawsuit is related to the insured's application for an increase in death benefits, which took place in August 1994, while the insured was a resident of the State of Virginia.  Therefore, the State of Virginia has a substantial relationship to the parties to the transaction.

Moreover, the Court finds that application of Virginia law in this case is not contrary to a fundamental public policy in West Virginia.  The Supreme Court of Appeals

of West Virginia held: "'The mere fact that the substantive law of another jurisdiction differs from or is less favorable than the law of the forum state does not, by itself, demonstrate that application of the foreign law under recognized conflict of laws principles is contrary to the public policy of the forum state.'" Syl. Pt. 7, **Howe**, 625 S.E.2d 716 (quoting Syl. Pt. 3, **Nadler v. Liberty Mut. Fire Ins. Co.**, 424 S.E.2d 256 (W. Va. 1992)).  The West Virginia courts "adhere to the general principle that a court should not refuse to apply foreign law, in otherwise proper circumstances, on public policy grounds unless the foreign law is contrary to pure morals or abstract justice, or unless enforcement would be of evil example and harmful to its own people."  **Howe**, 625 S.E.2d at 724-25 (**Nadler**, 424 S.E.2d at 265).  Plaintiff has not demonstrated a strong public policy necessary to avoid application of Virginia law in this matter. Therefore, under a contracts choice of law analysis, Virginia law applies.  However, there is disagreement among the district courts in the Fourth Circuit whether claims under the WVUTPA are analyzed under contract or tort choice of law analysis.  As a result, this Court will also conduct a tort choice of law analysis.

*2. Tort Choice of Law Analysis*

Plaintiff argues that a tort choice of law analysis should apply because Plaintiff's claims arise under the WVUTPA.  Therefore, Plaintiff contends that the court should apply the law of the place of the wrong (*lex loci delicti*).  *See* **Blais v. Allied Exterminating Co.**, 482 S.E.2d 659, 662 (W. Va. 1996).  Plaintiff's claims under the WVUTPA can be characterized as part-contract and part-tort: "part-contract because such claims do not arise in the absence of an insurance contract and part-tort because

such claims can be brought by third parties and result in awards of tort-like damages."

**Pen Coal Corp. v. William H. McGee and Co., Inc.**, 903 F. Supp. 980, 983 (S.D.W. Va. 1995) (ultimately applying a contract choice of law analysis to the dispute). The Fourth Circuit, in an unpublished decision, characterized claims brought under WVUTPA as tort claims. *See* **Yost v. Travelers Ins. Co.**, 181 F. 3d 95, 1999 WL 409670 (4th Cir. June 21, 1999) (citing **Poling v. Motorists Mut. Ins. Co.**, 450 S.E.2d 635, 638 (W. Va. 1994)). However, district court decisions in the Fourth Circuit have applied a contract choice of law analysis because "bad faith and unfair trade practices claims properly should be characterized as contract, not tort, claims." **In re Digitek Prods. Liability Litig.**, MDL No. 2:08-md-01968, 2010 WL 2102330 (S.D.W. Va. May 25, 2010) (quoting **Pen Coal Corp.**, 903 F. Supp. at 983).

In light of the conflicting views in this Circuit, the Court will also analyze the WVUTPA and bad faith claims as tort claims because the result is the same under both analysis. The tort choice of law analysis begins with the Restatement (Second) of Conflict of Laws broad, multi-factor test for tort claims. Section 145, General Principles, provides:

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
>
> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>     (a) the place where the injury occurred,
>     (b) the place where the conduct causing the injury occurred,
>     (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
>     (d) the place where the relationship, if any, between the parties is

centered.

**Restatement (Second) of Conflict of Laws § 145** (1971).

Section 6, Choice of Law Principles, provides:

> (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
>
> (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
>
>> (a) the needs of the interstate and international systems,
>> (b) the relevant policies of the forum,
>> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>> (d) the protection of justified expectations,
>> (e) the basic policies underlying the particular field of law,
>> (f) certainty, predictability and uniformity of result, and
>> (g) ease in the determination and application of the law to be applied.

*Id.* § 6. The West Virginia Supreme Court of Appeals applies the second Restatement of Conflict of Laws to address "particularly thorny" conflicts problems. ***Oakes v. Oxygen Therapy Servs.***, 363 S.E.2d 130, 131 (W. Va. 1987). The case before the Court is sufficiently complex due to the WVUTPA and bad faith claims that have been interpreted as quasi-contract and quasi-tort. Therefore, the Court will look to the Restatement (Second) of Conflicts of Law for guidance.

The Court first examines the four contacts listed in § 145.

The *first contact*, the place where the injury occurred, is West Virginia. Plaintiff lived in West Virginia at the time her husband, Insured, died. Plaintiff still resides in West Virginia. Therefore, "the worry, annoyance, and economic hardship of the delay in receiving compensation would have been suffered there." ***Yost***, 181 F.3d 95, *3.

The *second contact*, the place where the conduct causing the injury occurred, is

12

not as clear cut. Plaintiff and Insured lived in Virginia when Insured initially applied for and received the insurance certificate and designated Plaintiff as the beneficiary. Insured applied for the increase in the face amount of the insurance certificate in Virginia. Defendant and its Deputy allegedly misrepresented the "Application For: Change" in Virginia. Specifically, Plaintiff alleges that Richard Lyles did not advise Insured or Plaintiff that the "Acceptance of Change in Application" may be ineffective because it was not timely received at Defendant's headquarters before the October 18, 1994 expiration date. Mr. Lyles' alleged omission took place in Virginia. However, the adjustment of Plaintiff's claim and the alleged bad faith denial would have occurred mostly in Foresters' Toronto, Canada office. See *Yost*, 181 F.3d 95, *4 (finding that the place where the conduct causing the injury occurred was Travelers' Pittsburgh, Pennsylvania office because the claim was adjusted there).

The *third contact*, the domicil, residence, nationality, place of incorporation and place of business of the parties, produces numerous results. Plaintiff and Insured lived in Virginia for seventeen years, and they resided in Virginia when Insured initially applied for and received the Policy and when Insured applied for an increase in the Policy. Plaintiff and Insured moved to West Virginia in 2003, and Insured passed away in West Virginia in 2011. Plaintiff continues to reside in West Virginia. Defendant is headquartered in Toronto, Canada, and it does business nationwide. Thus, the third contact implicates Virginia, West Virginia, and Toronto, Canada.

The *fourth contact*, the place where the relationship, if any, between the parties is centered, is mainly Virginia. The life insurance certificate was applied for, negotiated,

13

entered into, issued, and delivered in Virginia.[1] The life insurance contract signed by the parties in Virginia specified that Virginia law should apply to the parties' rights or obligations under the contract. Additionally, the insured applied for an increase in the insurance certificate while in Virginia. He would have received the "Acceptance of Change in Application" when he was a resident of Virginia, which indicated that an additional $50,000 was issued on the insured with an extra rate. Plaintiff and Insured also received an issuance of a Specification of Certificate Changes that indicated Insured had a $130,000 Flexible Premium Adjustable Life Insurance Policy effective on August 14, 1994. These representations were made in Virginia. Thus, Plaintiff's and Insured's reasonable expectation that Insured had a $130,000 policy would have arose in Virginia. Plaintiff and Insured lived in Virginia for seventeen years. Although Plaintiff and Insured moved to West Virginia in 2003, the majority of the relationship between Plaintiff and Defendant occurred in Virginia.

After applying the factors in § 145, the Court now views the contacts in light of the Restatement's § 6 factors. Section 6 lists seven factors, however "[t]he meat of the Restatement test is factors two through five (§ 6(2)(b)-(e))." **Yost**, 181 F.3d 95, *4. Factor (e) addresses the basic policies underlying the particular field of law, in this case,

---

[1] Section 192 of the Restatement (Second) of Conflict of Laws provides that "[t]he validity of a life insurance contract issued to the insured upon his application and the rights created thereby are determined, in the absence of an effective choice of law by the insured in his application, by the local law of the state where the insured was domiciled at the time the policy was applied for, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied." In this case, even in the absence of the life insurance contract's Virginia choice of law provision, Virginia law would apply under this section of the Restatement because Plaintiff's husband, the insured, was domiciled in Virginia at the time he applied for the policy.

insurance law. The "purpose of laws like WVUTPA is to ensure fair play by insurance companies." *Id.* West Virginia's insurance regulations are designed to "protect the citizens of West Virginia." *Id.* (citing **Poling v. Motorists Mut. Ins. Co.**, 450 S.E.2d 635, 637 (W. Va. 1994) (noting that good policy reasons exist for permitting a bad faith action, such as encouraging quick settlements and discouraging unnecessary litigation).

Next, factor (b) considers the relevant policies of West Virginia, and factor (c) considers the relevant policies of other interested states, in this case, Virginia. As discussed above, West Virginia's policies focus on protecting its citizens and prohibiting bad-faith conduct by insurers. Virginia also has regulations designed to prohibit unfair trade practices in the business of insurance and prohibit bad-faith conduct by insurers. *See* **VA. CODE ANN. § 38.2-500**.

The last factor, factor (d), is the protection of justified expectations. Defendant and Plaintiff's husband entered into the life insurance contract while Plaintiff and Insured were residents of Virginia. The life insurance certificate had a choice of law provision that applied Virginia law to the "rights and obligations" of the parties under the life insurance contract. A choice of law provision in the contract suggests that the parties had a justified expectation that Virginia law would apply. *See* **Pen Coal Corp.**, 903 F. Supp. at 987 (noting that the "absence of a [choice of law] provision . . . makes unclear the expectations of the parties."). Plaintiff and Insured moved to West Virginia in 2003 and Insured passed away in West Virginia in 2011. Plaintiff argues that she lived in West Virginia for almost eight years before she made her claim or filed her lawsuit and that she availed herself of the protections of the laws of West Virginia. However,

Plaintiff has not argued that she and her husband moved to West Virginia with the expectation that when Insured passed away in West Virginia, Plaintiff could sue Defendant under West Virginia's laws if Defendant acted unfairly or in bad faith in handling her claim.  Additionally, although this is an alleged tort, the alleged tort could not exist absent a contract governed by another state's law.  Plaintiff argues that "WVUTPA is intended to protect West Virginia insured." **Ferrell v. Grange, Ins.**, 354 F. Supp. 2d 675, 679 (S.D.W. Va.).  However, in *Ferrell*, the Court pointed out that "Plaintiff entered into a *West Virginia insurance contract* with an insurance company licensed to insure in . . . West Virginia." *Id.* (emphasis added).  Here, Plaintiff entered into the insurance contract in Virginia and applied for the additional benefits at issue in Virginia.  Applying the Restatement (Second) of Conflicts of Law to this case, the Court finds that Virginia has the most significant relationship to the occurrence and the parties.  Thus, under a tort choice of law analysis, Virginia law applies.[2]

### B. Defendant's Motion to Dismiss Based on Virginia Law

Virginia's Unfair Insurance Practices Act does not provide a remedy for a refusal in bad faith to honor a first-party insurance obligation beyond those described in the statute.  **A&E Supply Co., Inc. v. Nationwide Mut. Fire Ins. Co.**, 798 F.2d 669, 676 (4th Cir. 1986).  Additionally, Virginia "would join the jurisdictions that have declined to

---

[2]As addressed in the contracts choice of law analysis, West Virginia "may decline to enforce laws it deems repugnant to its own strong public policy." **Nadler**, 424 S.E.2d at 262-65.  However, Virginia's law does not offend West Virginia's public policy merely because it is less favorable to the Plaintiff than West Virginia law would be. *See* **Yost**, 181 F.3d 95, *4 (holding that Pennsylvania had a substantial relationship to the occurrence and applied Pennsylvania law, even though it limited actions regarding bad-faith conduct by insurers to first-party insured.).  Upon this Court's review, the public policy exception does not apply.

recognize a remedy in tort for refusal in bad faith to honor a first-party insurance claim." *Id.* In a first-party Virginia insurance relationship, "liability for bad faith conduct is a matter of contract rather than tort law. The obligation arises from the agreement and extends only to situations connected with the agreement." *Id.* (quoting **Reisen v. Aetna Life & Cas. Co.**, 302 S.E.2d 529, 533 (Va. 1983). Therefore, Virginia law does not recognize a tort claim when an insured or beneficiary charges that an insurer was actuated by bad faith in breaching the contract of insurance. Because a cause of action must be brought under breach of contract and not tort, punitive damages are not available. *See* **Kamler Corp. v. Haley**, 299 S.E.2d 514, 518 (W. Va. 1983). Additionally, bad faith under Virginia Code § 38.2-209 is not an independent cause of action; rather, it is ancillary to a cause of action for breach of an insurance contract. *See* **Adolf Jewelers, Inc. v. Jewelers Mut. Ins. Co.**, 2008 WL 2857191, at *5-6 (E.D. Va. July 21, 2008) ("Section 38.2-209 does not create an independent cause of action.').

In this case, Plaintiff has alleged violations of WVUTPA, and there are similar provisions under Virginia's Unfair Trade Practices Act, Va. Code § 38.2-500, *et seq.* However, Plaintiff has not alleged a breach of contract. Pursuant to § 38.2-510(B), unfair claim settlement practices, "[n]o violation of this section shall of itself be deemed to create any cause of action in favor of any person other than the Commission; but nothing in this subsection shall impair the right of any person to seek redress at law or equity for any conduct for which action may be brought." **VA. CODE ANN. § 38.2-510(B)**. Therefore, although the substance of Plaintiff's Complaint may have alleged some violation of Virginia's Unfair Trade Practice Act, Plaintiff has only alleged torts, not a

17

breach of contract. Because Virginia law does not recognize a tort remedy for bad-faith refusal to honor a first-party insurance claim and Virginia's Unfair Trade Practices Act does not create a private right of action in tort, Plaintiff has failed to state a claim upon which relief can be granted under Virginia law. Accordingly, Defendant's Motion to Dismiss Based on Virginia Law is granted.

### V. Conclusion

For the foregoing reasons and in reconsidering the Court's previous Memorandum Opinion and Order, this Court hereby **GRANTS** the Defendant's Motion to Dismiss Based on Virginia Law.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is directed to enter judgment on this matter.

**DATED**: June 18, 2013

GINA M. GROH
UNITED STATES DISTRICT JUDGE